The next case for argument is Gil v. Lynch. Good morning, Honors. May it please the Court, Joshua Bardavid for Mr. Gil. At first glance, this case appears to present the difficult task of synthesizing New York Domestic Relations Law, New York Trust and Estates Law, Federal Immigration Law, 1944 Dominican Republic Law, and a 1995 Dominican Republic Law. But fortunately, actually, this Court doesn't need to engage in that task for a much simpler concept. That concept is that the agency must engage in this task in the first instance. Mr. Gil presented repeated arguments and evidence that the 1995 Dominican Republic Law had retroactive effect. But neither the immigration judge nor the Board of Immigration Appeals considered this argument. The statute says the legitimation must take place before the child reaches the age of 16 years. Yes, Your Honor. So did that happen here? Under the Dominican law that was in effect at the time of the acknowledgement of paternity, no, absolutely not. So doesn't that end the question? No, Your Honor. Because then the question remains is whether the 1995 law, which if in effect at the time of the acknowledgement of paternity, would have constituted sufficient legitimation. If that law is retroactive, as the Dominican authorities, the evidence presented in the record, indicate that it is in fact retroactive, then that would constitute a sufficient legitimation at the time of the legitimation. But whose law governs when the legitimation has to have been effective? In this instance? Yes. It would actually be both laws because we would have American law. U.S. law says has to have occurred prior to, or I guess at the day of, maybe that doesn't work, that's not our issue, the time he was 16. At the time he was 16, he was not legitimated. That did not occur until he was 24, 25, something like that. Well, the change in law occurred when he was 24. Right. So he was not legitimated until he was 24, so. Correct. But the question then is whether or not a law having retroactive effect would have been sufficient for the purposes of legitimation. Whose law do we decide whether that law gets to supersede essentially U.S. law? Well, it would first be looking at Dominican law, whether or not under Dominican law a retroactive. At the age he was 16. Correct, yes. And he was not legitimated. But then whether or not the 95 law is retroactive and is sufficient to accomplish under Dominican law, as the Dominican authorities say it is, for legitimation to actually have been deemed sufficient. And then the question is whether or not under U.S. law that is sufficient. How do you fit that argument within the wording of the statute? You're saying the 1995 change in the law has retroactive effect and that that somehow we should treat the legitimation as of the time before he turned 16. But how does that fit with the language of the statute? Just like any other retroactive statute. So, for example, a person commits a crime in 1995 that was not deemed a crime of an aggravated felony at the time. 1997, IRA IRA comes into effect and has retroactive effect, as per St. Cyr, as per the Supreme Court said. And so, in fact, even though at the time in 1995 the crime was not deemed an aggravated felony, because of a retroactive 1997 law, it is retroactively deemed an aggravated felony. And that concept permeates all of immigration law. And so whether or not a law has retroactive effect to essentially, as a matter of law, deem an act that occurred in this instance occurred in 1974 to be sufficient because of a 1995 law, that is the argument that was presented. The problem is you've got two different sovereigns talking in the present example. And in the hypothetical you gave us, you've got one sovereign and Congress giveth and Congress can taketh away. Yes, Your Honor. Right. But the bigger problem is that this was not factored in. This was not addressed. This was not analyzed. This was not considered. Literally, the word retroactive doesn't occur. Why do we need to send it back in order to analyze the issue? Because of the longstanding concept that the agency is the one that is supposed to analyze the issue in the first instance before this court. This court is only a reviewing body. And, therefore, the decision of the agency stands and falls in the language provided by the agency. And because- And if they get it wrong, we can tell them that, right? Precisely. Precisely. And so that would be- We save a step. Because it's for the agency to do so in the first instance. And then this court to review the rationale, the law, the basis for the agency making that finding. But because the agency didn't make that finding in this instance, that's why it's appropriate to at least send it back to the agency to consider the retroactivity argument that was presented in multiple instances and multiple briefs and from two different analyses by the Dominican government, which, as this court stated in Watson, should be the most important factor in determining whether or not a child has been legitimized. So is there any factual dispute? I'm just thinking about how we might handle this, we the panel, this court. And, obviously, I have not talked with my colleagues about it. But are there any facts in dispute with respect to what occurred? I don't believe so, Your Honor. The facts- Let's assume that under Dominican law, he's legitimate now. Under Dominican law now. Then it comes down to a question of determining whether under federal law that determination applies. Yes, Your Honor. That's the issue. That's precisely the issue. But, again, I think that- Why isn't that a straightforward legal issue for us? It is a straightforward legal issue, but because the agency hadn't reviewed that legal issue, at the very least the agency should make that legal determination in the first instance. But should the court want to reach that issue, I think the record is clear that because the Dominican government, the Central Board of Elections, which is the authority that interprets its civil laws, issued a statement specifically for this record that says that the law had a retroactive effect, that should be sufficient to deem Mr. Gill as a U.S. citizen. Just very briefly, the government- Can I ask you something? You say specifically for this record? Yes. At your request? Yes, Your Honor. And that's why this case is distinguishable from the matter of Martinez, which is a 1997 BIA decision, which did consider the law, the 1995 Dominican law. And in that case, in matter of Martinez, there was absolutely no discussion, no evidence of the retroactive application of the 1995 law. And that's why this court wouldn't be bound by the BIA's decision in that case, because this specific evidence was not a part of matter of Martinez and unfortunately wasn't considered by the BIA in this specific case. Thank you, Your Honor. Thank you, Mr. Vardavid. You've reserved three minutes for rebuttal. Thank you. Good morning, Ms. Damiano. May it please the Court, Lisa Damiano on behalf of the Attorney General, good morning to you all. This case involves one issue, and what has been discussed is that Mr. Gill has failed to derive United States citizenship through his father's naturalization. Excuse me. Certainly he did at the time in question, and everybody agrees on that. Yes. Mr. Gill concedes. The only question is the retroactivity point. Absolutely. I'll address Mr. Gill's points in turn. First of all, he relies on the fact that the board did not address the retroactivity issue. The board addressed the arguments that were presented to it. The word retroactive did not appear in the notice of appeal to the board. It did not appear anywhere in the brief to the board. On page 177 of the record, that is a part of the BIA brief that discusses this issue. The government's not arguing or the respondent, sorry, the Attorney General is not arguing waiver here, though, or forfeiture, right? We're not arguing waiver, Your Honor. Because there's no genuine issue of material fact that's been alleged, this court has jurisdiction to decide the matter. But Mr. Gill has argued that it should be sent back to the board to determine in the first instance the retroactivity, and that somehow the board did wrong by not addressing these retroactive arguments. But the argument was presented to the board in the language that the law has changed in the Dominican Republic. See Exhibit K, which is at page 299 in the record, 299 and 300. You're saying the board did address the issue? Yes, I'm sorry, Your Honor, yes. Without using the word retroactive? They absolutely did. On page 5 of the record, the board's decision says that we acknowledge the respondent's appellate assertion that the law changed in the Dominican Republic in a manner that eliminated the legal distinction between children born in wedlock and children born out of wedlock. They cite Mr. Gill's brief. Then they cite matter of Martinez and matter of Cabrera. They go on to say we also acknowledge the evidence presented, which respondent asserts to be sufficient to establish he was legitimated. And he, again, the board cites to respondent's brief. And those pages they cite are the pages that argue that, yes, there's a change in the law, and therefore now Mr. Gill is considered legitimated. No, that's different from saying it's retroactive. If it were to happen today, he would be legitimate. But is that the same as saying that it retroactively legitimates him? Well, the board cited matter of Martinez-Gonzalez, and this precise question was addressed in matter of Martinez. And in that case, the definition of child looked at was under 1101B instead of 1101C. But those two definitions are substantially the same, except in the context of citizenship, the requirements need to be met by age 16, and in a visa context, it's 18. But the two definitions are the same. Matter of Martinez-Gonzalez analyzed this exact statute and this precise situation where the law changed, but the individual in that case was over the statutory cutoff age in 1995 when the new Dominican law took effect. And they determined that it doesn't matter. Why is the board right on this? The board is right because whether or not somebody is legitimated is a question that needs to be answered in order to figure out whether someone meets that definition of child. But there's also the United States law. And under the United States law, the child has to show several things. He has to show that he's legitimated, but then he also has to show that he did so before age 16. To read the law the way Mr. Gill wants us to, it would read out the statutory age cutoff. It would negate Congress's intent to ensure that a child is legitimated before age 16. And we must all remember that this statute is for children. Derivative citizenship is for children. If Mr. Gill wanted to become a citizen later in life because he did not derive from his father, he could have filed an N-400 application for naturalization at any time after 1983. He had- There was a period of eight years from age 16 up to the time when he was not legitimated, if we accept the petitioner's argument. Yes, I mean- I mean, the retroactivity, there was no retroactivity offered by the Dominican Republic until he reached age 24. So there was an eight-year period within which he knew or should have known he was not. Absolutely. He was, again, not-the law didn't change until 1995. He was actually 27. Yeah. So, again, Mr. Gill wants us to read retroactivity into our own statute. That would cause us to have to abide by a foreign government's interpretation of the temporal reach of its own laws. It would basically cede that authority to a foreign government. And we have an explicit language in the statute here that says that these requirements must be met by age 16. Okay. And regarding the documentation, petitioner discusses matter of Martinez-Gonzalez in a way- Martinez-Gonzalez because, in effect, that case is exactly the same as this one, except it was looking at the child definition at 1101B. Except in matter of Martinez-Gonzalez, they did have the benefit of a legal opinion from the Dominican Republic. We don't know if it's exactly word for word, but we know that legal opinion was presented to the board all the way back in 1996 in matter of Cabrera, which is the case, the board case Cabrera looked at the law change in the Dominican Republic and the legitimacy issue. In Cabrera, they had a legal opinion from the Dominican Republic. They had a legal opinion from Library of Congress. And those opinions stated that, yes, now the law applies in such a way that it applies to present and future legal situations, as well as legal situations that were established before the law. And that is the same language that you'll find in the documents in this record at AR-299 and 300, are the central electoral board opinion on this case. It's the same language as in Cabrera. Matter of Martinez-Gonzalez had that information as well, cites to Cabrera and the legal opinion there. They're aware that the Dominican Republic views this as retroactive. They don't use the word retroactive in their opinion. Again, that word does not appear anywhere in the board brief, and it doesn't appear actually in the documents from the Dominican Republic. They merely say it applies to legal situations that took place before the 1995 law changes. So whether somebody is legitimate in the eyes of the Dominican Republic does not mean they don't have to meet the requirements of the U.S. statutes. Congress has been given the sole authority to determine citizenship matters in this country. We look to the Dominican law to determine whether the person is legitimated, but they still have to meet the requirements of our statute. And again, this is a— So your point is that he was legitimated under Dominican law at the age of 27? Yes. Not at the age of 16? No. Somehow, by operation of retroactivity. The legitimating event, the two events are the change in law and the recognition of paternity. The recognition of paternity occurred in 74, so that's not an issue. Right. But the law changed in 95. Yeah. Yes, and the case law is consistent. The board and the agency have interpreted this issue consistently in matter of Cross, matter of Patrick, matter of Martinez-Gonzalez, and they said both legitimating events have to occur before the child reaches the age of 16. The change in law must occur, and the paternity recognition— Just correct my view. Is it—under the federal statute, is 16 the cutoff? For citizenship, yes. For citizenship. For the definition of child, for citizenship. For visas, it's 18. But it's the same definition otherwise. Yeah. So, again, this statute is intended to apply to children, not to somebody 27 or 37 or 57 that has a change in law in the country they were born in. If that adult wants to become a citizen, they file for naturalization, and he could have done so at any time after 1983, but he didn't avail himself of that opportunity. Right. Thank you, Ms. Domingo. Thank you. Mr. Bardavid, you're reserved three minutes. Yes, sir. The government cautions that if our arguments are accepted, that we would have to rely on the Dominican Republic for determining the temporal scope of its statutes. That's precisely what we're asking, but that's not just what we're asking. That's what the law says. This court in Watson, if I may quote, says, a foreign country's own representation of its laws is the most instructive aspect of determining legitimization. How do you respond to the government's argument that derivative citizenship is intended to benefit children, not someone who's 27 years old? Derivative citizenship is intended to benefit children. A child becomes an adult. The question, though, is whether or not this individual was raised, in fact, by his U.S. citizen father. His mother passed away at the age of, I believe, 9. His father recognized paternity at the age of 6. The point of these revisions is to keep families intact and, therefore, you let children have derivative citizenship. None of that is furthered by, you know, the arguments your client is making now. If the sole purpose of this statute of derivative citizenship would be to maintain family unity of a child, then the statute would, in fact, require that the person prove the derivative citizenship prior to becoming an adult. The statute doesn't have that cutoff. The statute permits anybody to prove derivative citizenship at any age. So since the statute itself doesn't require that the child prove derivative citizenship, but that the person, regardless of age, prove derivative citizenship at the time they were a child, then it is equally applicable to Mr. Gill as it would be to anybody else. And so, therefore, that is not sufficient evidence that Mr. Gill cannot benefit from the statute. Again, it returns us to the simple question of whether or not the Dominican law was intended to apply retroactively. With respect to Waiver 1, that wasn't raised by the government in their brief, but to the extent that the government is now arguing that Mr. Gill didn't properly raise this to the board, I would note from page 105 to 109, in a memorandum that was attached to his brief, which he specifically cited, he- The government is changing that argument. Okay. And, therefore, the issue of the sole issue is whether or not the Dominican law was intended to apply retroactively. We submit that the Dominican Central Board of Elections' legal opinion confirms that it was intended to apply retroactively, and that is sufficient for Mr. Gill to obtain citizenship. And, at the very least, the board should analyze this issue in the first instance. Unless the court has any further questions, we'll rest on our briefs. Thank you. Thank you both. We'll reserve decisions.